**John GAMBLE, Plaintiff–Appellant,**

**v.**

**LEVITZ FURNITURE COMPANY OF THE MIDWEST INC.,**
**Defendant–Appellee.**

**No. 85CA0456.**

Colorado Court of Appeals,
Div. III.

Feb. 18, 1988.

As Modified on Denial of Rehearing
April 7, 1988.

Certiorari Granted (Gamble)
Aug. 22, 1988.

Terry Tomsick, Denver, for plaintiff-appellant.

Pryor, Carney & Johnson, P.C., Thomas L. Roberts, Friedrick C. Haines, Denver, for defendant-appellee.

KELLY, Judge.

In an action premised on an allegation of discriminatory discharge from employment, the plaintiff, John Gamble, appeals the summary judgment entered in favor of the defendant, Levitz Furniture Company of the Midwest, Inc. Gamble contends that the trial court erred in concluding, as a matter of law, that he had not established a record of being handicapped. We affirm in part, reverse in part, and remand with directions.

Levitz hired Gamble in 1972 to work in one of its stores in Kansas. Gamble had suffered from asthma since he was in junior high school, and he continued to experience breathing problems while living and working in the Kansas City area. In 1977, on the advice of his doctor, he asked Levitz' operations manager in Kansas City about relocating to a less humid area. In early 1978, Levitz accommodated his request by transferring him to its Lakewood, Colorado, store, where his asthma improved considerably.

In 1982, Gamble's supervisors convinced him that his best career opportunities lay in Levitz' operations management program. After agreeing to relocate anywhere within a five-state region, which included Colorado and Texas, Gamble entered the Levitz' operations manager training program. In July 1983, while he was on temporary assignment in Addison, Texas, Levitz sent Gamble to Houston to interview for a job in one of its stores there. While in Texas,

particularly during the Houston trip, Gamble purportedly suffered renewed asthma symptoms, and he informed several of his supervisors about these problems.

Gamble began preparing to move to Houston; however, the symptoms he had experienced while he was in the humid Houston climate made him hesitant to accept the transfer. After discussing the problem with his wife, his doctor, and his supervisors, Gamble refused the transfer. Levitz immediately terminated his employment without offering any accommodation, even though Gamble offered to work in Texas temporarily and to accept a management position anywhere within the five-state area where the climate was less humid. Levitz denied firing Gamble because of his asthma. It alleged that he had reneged on his agreement to relocate.

Charging handicap discrimination in violation of § 24–34–401, et seq., C.R.S. (1982 Repl.Vol.10), Gamble exhausted his administrative remedies through the Colorado Civil Rights Commission. He then filed this complaint in district court.

Gamble alleged four claims for relief: handicap discrimination in violation of § 24–34–402, C.R.S. (1982 Repl.Vol.10), breach of contract of employment, wrongful discharge in violation of public policy based on his statutory right to participate in on-the-job training programs pursuant to § 24–34–402(1)(f)(I), C.R.S. (1982 Repl.Vol. 10), and outrageous conduct. Levitz moved for summary judgment. The trial court granted the motion as to the first and third claims and entered judgment pursuant to C.R.C.P. 54(b).

Gamble contends that the trial court erred in granting summary judgment because it misconstrued the statute defining "handicap," § 24–34–301(4), C.R.S. (1982 Repl.Vol.10), to require him to satisfy a three-part test: that he has a physical impairment, *and* that he has a record of impairment, *and* that he is regarded as having an impairment. The trial court ruled that Gamble had failed to show sufficient evidence to establish a "record of impairment," and, therefore, he could not recover

for a discriminatory discharge under § 24–34–402(1), C.R.S. (1982 Repl.Vol.10).

Gamble asserts that, under the proper construction of the statutory definition of "handicap," a "record of impairment" is an alternative theory under which a person may proceed if he is not presently handicapped, but has a history of impairment which the employer uses to deny him employment opportunities. Further, Gamble urges that he presented sufficient evidence on that issue to withstand a motion for summary judgment. As to the first claim for relief, we agree that summary judgment was inappropriate.

It is unlawful for an employer "to discharge ... or to discriminate ... against any person otherwise qualified because of handicap." Section 24–34–402(1)(a), C.R.S. (1982 Repl.Vol.10). The statutory definition of a handicap is "a physical impairment which substantially limits one or more of a person's major life activities *and includes* a record of such an impairment *and* being regarded as having such an impairment." Section 24–34–301(4), C.R.S. (1982 Repl.Vol.10) (emphasis added); *cf.* Civil Rights Commission Rule 60.1, § B.1, 3 Code Colo.Reg. 708–1 (comma inserted after the words "major life activities").

Although the Colorado statute defines "handicap," it does not define "handicapped *individual.*" The federal statute, however, on which the Colorado statutory scheme is based, defines "handicapped individual" as "any person who (i) *has* a physical ... impairment which substantially limits one or more of such person's major life activities, (ii) *has* a record of such an impairment, *or* (iii) *is regarded* as having such an impairment." 29 U.S.C.A. § 706(7)(B) (West 1985) (emphasis added). *See also* 29 C.F.R. § 32.3 (1986).

The Colorado definition of "handicap" parallels the operative language of the federal definition of "handicapped individual." However, rather than using the disjunctive form found in the federal statute, the state statute employs "and" together with "includes." *Compare* § 24–34–301(4), C.R.S. (1982 Repl.Vol.10) *with* 29 U.S.C.A. § 706(7)(B) (West 1985). Hence, the issue

presented is whether the General Assembly intended the "and includes" language to import the disjunctive meaning, thereby giving the Colorado definition of "handicap" the same broad application as the federal definition of "handicapped individual." We conclude that the General Assembly intended just that.

 In construing legislative intent as to statutes, it is presumed that the General Assembly intended a just and reasonable result. *Ingram v. Cooper*, 698 P.2d 1314 (Colo.1985); § 2–4–201(1)(c), C.R.S. (1980 Repl.Vol.1B). Statutes should be interpreted, if possible, to harmonize and give meaning to other potentially conflicting statutes. *People in Interest of D.L.E.*, 645 P.2d 271 (Colo.1982). In interpreting the meaning of "and" or "or" in statutes, regulations, and ordinances, the substitution of one for the other may be necessary. *Thomas v. City of Grand Junction*, 13 Colo.App. 80, 56 P. 665 (1899); *see also Henrie v. Greenless*, 71 Colo. 528, 208 P. 468 (1922) (courts may substitute "or" for "and," or vice versa, to carry out the legislative intent); *In re Estate of Dodge*, 685 P.2d 260 (Colo.App. 1984).

 If the statutory language creates an ambiguity, the reviewing court, in determining legislative intent, may consider, among other things, the object to be attained, the legislative history, laws on the same or similar subjects, the consequences of a particular construction, and the administrative construction of the statute. Section 2–4–203, C.R.S. (1980 Repl.Vol.1B). We conclude that the Colorado statutory definition of "handicap" creates an ambiguity which requires consideration of these extrinsic sources to interpret the statute properly.

 The object to be attained by §§ 24–34–301(4) and 24–34–402(1), C.R.S. (1982 Repl.Vol.10) is to eliminate discrimination in employment on account of physical handicap. *See* Civil Rights Commission Rule 60.1, § A, 3 Code Colo.Reg. 708–1. The legislative history of § 24–34–301(4), C.R.S. (1982 Repl.Vol.10) does not reveal why the General Assembly chose to define "handicap," rather than "handicapped individual,"

why it chose to use a syntactical construction different from the federal statute, or whether it intended to protect a narrower class of people in doing so. However, the federal statute clearly was intended to bring within its protection three types of people who may suffer from discriminatory conduct: those who presently have an impairment, those who have had an impairment in the past, and those who are regarded by others as having an impairment. *Tudyman v. United Airlines*, 608 F.Supp. 739 (C.D.Cal.1984); *see* 29 U.S.C.A. § 706(7)(B) (West 1985).

Congress added the "is regarded as having such an impairment" language to the federal statute in 1974 with the express intent of protecting those persons who do not have a present or past impairment, but are perceived by others as having an impairment:

"[T]he new definition clarifies the intention to include those persons who are discriminated against on the basis of handicap, whether or not they are in fact handicapped, just as Title VI of the Civil Rights Act of 1964 prohibits discrimination on the ground of race, whether or not the person discriminated against is in fact a member of a racial minority. This subsection includes within the protection of sections 503 [affirmative action] and 504 [nondiscrimination] those persons who do not in fact have the condition which they are perceived as having as well as those persons whose mental or physical condition does not substantially limit their life activities and who are thus not technically within [the first clause] in the new definition. Members of both of these groups may be subject to discrimination on the basis of their being regarded as handicapped."

S.Rep. No. 93–1297, 93rd Cong., 2d Sess. (1974), *reprinted in* 1974 U.S. Code Cong. & Admin.News 6373 at 6389–90; *see Southeastern Community College v. Davis*, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed. 2d 980 (1979) (fn. 6); *E.E. Black, Ltd. v. Marshall*, 497 F.Supp. 1088 (D.Haw.1980). We believe the General Assembly understood the federal statute to cover three

types of handicapped individuals—those with *present* impairments, those with *past* impairments, and those *perceived* as having impairments—and, in promulgating the state definition of "handicap," meant to protect these same three groups of people.

We find further support for our conclusion in the administrative construction of § 24–34–301(4), C.R.S. (1982 Repl.Vol.10). Civil Rights Commission Rule 60.1, § B.1.d, 3 Code Colo.Reg. 708–1, states that "is regarded as having an impairment" means:

"(1) has a physical impairment which does not substantially limit major life activities but is treated by a person subject to the law as constituting such a limitation; (2) has a physical impairment which substantially limits major life activities only as a result of the attitudes of others towards such impairment; or (3) has no impairment but is treated as having an impairment by a person subject to the law."

A person cannot both have an impairment and not have an impairment; nor can a person have an impairment that both substantially limits and does not substantially limit major life activities. *Compare* § 24–34–301(4), C.R.S. (1982 Repl.Vol.10) *with* Civil Rights Commission Rule 60.1, § B.1, *supra*.

Thus, to interpret the statute in the conjunctive sense, as Levitz advocates, would place on a plaintiff an impossible burden of proof because of the internal inconsistency within the clauses and subsections of the regulation. *See* Civil Rights Commission Rule 60.1, § B.1, *supra*. Hence, it is necessary for a plaintiff to establish only one of the disjunctive propositions in order to demonstrate his or her status as a handicapped person.

▮ In this case, to fall within the protection of § 24–34–402(1)(a) and (1)(f)(I), C.R.S. (1982 Repl.Vol.10), Gamble needs only to prove with regard to his asthma: (1) that it is a physical impairment, that is, a physiological disorder or condition affecting a body system, such as the respiratory system, which substantially limits a major life activity, such as breathing or working; or (2) that he has a record or history of such an impairment; *or* (3) that he is regarded as having an impairment by a person subject to the law, *i.e.*, his employer, Levitz. *See* Civil Rights Commission Rule 60.1, *supra*.

▮ The trial court failed to consider whether Gamble's asthma qualified as a handicap under either the first or third of these independent tests. Instead, the trial court applied only the second test and ruled that Gamble's only evidence of a "record of impairment" was a 1977 letter from his Kansas City supervisor citing his "allergies" as justification for the transfer to Colorado. In this, the court erred, not only in applying only the second test, but also in its treatment of that test.

The court had before it additional evidence from which it could have determined that Gamble had a "record of impairment" from asthma, including: Gamble's doctor's deposition, plus some of his medical records from Kansas City; depositions by Gamble's supervisors establishing that he notified them about his asthma problem before he was terminated; Gamble's own affidavit stating that he had been troubled by asthma since childhood; and his wife's deposition testimony about his asthma. This evidence tended to establish that Gamble had a "record of impairment." *See School Board v. Arline*, 480 U.S. ——, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987) (hospitalization for tuberculosis some years prior to employment sufficient to establish a record of impairment within the meaning of 29 U.S. C. § 706(7)(B)(ii)); 29 C.F.R. § 32.3 (1986); Civil Rights Commission Rule 60.1, *supra*. Hence, an issue of material fact was present and summary judgment was inappropriate. *See Morlan v. Durland Trust Co.*, 127 Colo. 5, 252 P.2d 98 (1952); C.R.C. P. 56(c).

Once Gamble establishes at trial that his asthma is a handicap within the statutory definition of § 24–34–301(4), C.R.S. (1982 Repl.Vol.10) as construed herein, he must establish additionally that Levitz violated the provisions of § 24–34–402(1)(a) and (1)(f)(I), C.R.S. (1982 Repl.Vol.10) in discharging him from employment. *See Metro Denver Maintenance Cleaning, Inc. v.*

*Colorado Department of Labor & Employment,* 738 P.2d 49 (Colo.App.1987).

■ As to Gamble's third claim for relief, however, we agree with Levitz that summary judgment was appropriate only to the extent that the claim is based on a public policy exception to the general rule that an indefinite general hiring is terminable at will by either party. *See Lampe v. Presbyterian Medical Center,* 41 Colo.App. 465, 590 P.2d 513 (1978). Even if we assume that a public policy exception is available, it is not available when, as does § 24–34–402(1)(f)(I), C.R.S. (1982 Repl.Vol. 10), the statute in question provides the employee with a wrongful discharge remedy. *See Corbin v. Sinclair Marketing, Inc.,* 684 P.2d 265 (Colo.App.1984); § 24–34–306, C.R.S. (1982 Repl.Vol.10). Nevertheless, insofar as Gamble's third claim for relief states a claim for violation of any statutory right he may have had to participate in an on-the-job training program under § 24–34–402(1)(f)(I), C.R.S. (1982 Repl.Vol.10), it is sufficiently pled elsewhere in the complaint to give Levitz notice of the claim and may appropriately be pursued under the first claim for relief.

Accordingly, the summary judgment entered on the third claim for relief is affirmed. The summary judgment on the first claim for relief is reversed, and the cause is remanded to the trial court with directions to reinstate the plaintiff's first claim for relief and for further proceedings consistent with this opinion.

TURSI and CRISWELL, JJ., concur.