Kenneth W. LATHROP,
Plaintiff–Appellant,

v.

ENTENMANN'S, INC.,
Defendant–Appellee.

No. 87CA0876.

Colorado Court of Appeals,
Div. III.

Jan. 23, 1989.

Rehearing Denied Feb. 23, 1989.

Haskell and Menter, Jeffrey Menter, Denver, for plaintiff-appellant.

Sherman & Howard, Charles W. Newcom, Susan K. Grebeldinger, Denver, for defendant-appellee.

CRISWELL, Judge.

Plaintiff, Kenneth W. Lathrop, appeals from the summary judgment dismissing his claims for wrongful discharge against the defendant, Entenmann's, Inc. The district court entered its judgment because it concluded that all of the claims asserted by plaintiff were "pre-empted" by the provisions of § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1982). Because we conclude that none of plaintiff's claims are pre-empted by this statute, and because there exist genuine issues of fact to be resolved, we reverse.

Defendant is in the bakery business. Certain of its employees, including plaintiff, are represented for collective bargaining purposes under the National Labor Relations Act, 29 U.S.C. § 151, et seq. (1982), by the Bakery, Confectionary and Tobacco Workers International Union, AFL–CIO, Local 29 (the union). During the period relevant to this litigation, defendant and the union were parties to a collective bargaining agreement (the contract) that regulated the employees' wages, hours of work, and other terms and conditions of employment.

Among the provisions of the contract are those that establish a plantwide seniority system for various purposes, including a seniority "bidding" system for filling any permanent job vacancy. Under the contract, an employee's seniority is terminated only by his discharge, his voluntary quitting of the job, his "layoff" of more than 12 months, or his absence from the job for more than 12 months because of an illness or injury. However, if the employee's absence is necessitated by an occupational illness or injury, that circumstance will merit "exceptional consideration." In addition, defendant has agreed not to discriminate against any employee because of a "non-disabling handicap."

The contract also establishes a mandatory grievance and arbitration procedure which must be followed to resolve any dispute relating to the "administration and interpretation" of any of its terms. Pursuant to this procedure, a "disciplinary penalty" may be made the subject of binding arbitration, if it is alleged that such discipline was imposed without "just cause."

In November 1982, plaintiff sustained an industrial injury while working for defendant, and he filed a claim for workmen's compensation benefits. That claim was settled in July 1985, when defendant's workmen's compensation carrier paid plaintiff a lump sum in full settlement of his workmen's compensation claim.

Plaintiff's employment status with defendant during the time that his workmen's compensation claim was pending is unclear. Apparently, plaintiff continued to work at his regular job until sometime in November 1984, when he was informed that he would not be able to work any longer without providing a written statement from his physician fully releasing him to perform his job.

Defendant asserted in the trial court that, when plaintiff was unable to produce such a statement, he was placed on "medical absence" and that, as of October 15, 1986—some five months after plaintiff's complaint in this suit was filed—plaintiff remained in that status. Implicitly, this assertion denied that plaintiff's status as an employee, or his seniority, had been terminated as of that date. During this

period, however, the record is silent whether plaintiff was allowed to engage in seniority bidding for job vacancies, or was otherwise treated as an active employee.

Plaintiff's evidence was that, when defendant requested the production of a physician's statement, he provided a letter authorizing him to perform light duty. He testified that defendant then had a policy of allowing employees to perform light duty, but, when he made such a request of his supervisor, he was told he could no longer work for defendant. He contends that he contacted both his attorney and the union at that time, but was told that nothing could be done for him under the contract until his workmen's compensation claim was resolved.

He further alleges that, in August 1985, defendant's operations manager informed him that he would be allowed to work, if he returned to defendant the amount he had received as a result of the settlement of his workmen's compensation claim. He says that he later obtained another physician's statement, attesting that he could return to work in another area of the bakery, but defendant refused him such employment on January 2, 1986, at which time he considered that he had been constructively discharged.

On January 14, 1986, plaintiff filed a written grievance under the contract, protesting his "layoff" since November 1984 and his "constructive discharge" on January 2, 1986. In this grievance, plaintiff asserted that his layoff and discharge were in retaliation for his filing of a workmen's compensation claim. For reasons that do not appear in this record, this grievance was not referred to arbitration, and in May 1986 plaintiff commenced this suit.

Plaintiff's complaint seeks recovery on two theories of relief, and in a third part, seeks the award of exemplary damages, based upon the factual predicate alleged in the first two claims. The two theories of recovery are each based upon the assertion that plaintiff had been constructively discharged by defendant in retaliation for his filing a workmen's compensation claim. The first claim asserts that his discharge was without "just cause," and the second claim alleges that his discharge was "wrongful." He alleges that the dispute was not submitted to arbitration under the contract because the union "breached its duty of fair representation by failing to request arbitration" of the grievance filed by him.

I.  Federal Pre–Emption

A.  The general rule.

In authorizing the federal courts to adjudicate claims based upon the breach of a contract between an employer and a labor organization, § 301 of the Labor Management Relations Act requires the development of a body of substantive federal law applicable to union contracts. *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). And, while this statute does not prohibit an action based upon a violation of such a contract from being adjudicated by the state courts, the federal law developed under § 301 must be applied by those courts to the exclusion of any inconsistent state law that might otherwise be applicable. *Teamsters Local No. 174 v. Lucas Flour Co.*, 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962); *Digby v. Denner*, 156 Colo. 260, 398 P.2d 30 (1965).

Under this federal law, if a union contract requires disputes arising under that contract to be resolved by binding arbitration, neither the federal nor state courts have the authority to pass upon the merits of those disputes. *United Steelworkers v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). Indeed, a state may not recognize any type of state claim, whether that claim is grounded in contract or in tort, that would require an interpretation of the union contract, if its interpretation has been committed to the jurisdiction of an arbitrator. *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985) (state may not grant relief against insurance

carrier for bad faith refusal to settle claim where right to payment of benefits depends upon terms of union contract).

Here, the contract is clear that the propriety of any "disciplinary penalty" is to be determined under the contract's grievance and arbitration proceedings. Whether "just cause" existed for plaintiff's alleged constructive discharge would, therefore, normally be determined by the arbitrator, and the courts could not become involved in the controversy. There are, however, certain exceptions to § 301's general prohibition against judicial intervention, and in our view, each of the claims asserted by plaintiff falls within such an exception.

### B. The federal claim for contract breach.

A labor organization selected as the exclusive representative for an appropriate unit of employees has a duty to represent each employee within the unit fairly, irrespective of the employee's union membership. If a union violates this duty, the employee may assert a claim against it. *See Ford Motor Co. v. Huffman*, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953); *Steele v. Louisville & Nashville R.R. Co.*, 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944).

A union violates its duty of fair representation only when its action, or its failure to act, is based upon "arbitrary, discriminatory or ... bad faith" reasons; simple negligence on behalf of the bargaining representatives does not give rise to any claim. *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

Moreover, if the union's violation of its duty of fair representation owed to an employee consists of its arbitrary or discriminatory failure to submit an employee's grievance to the arbitration procedures set forth in the union contract, or its failure to prosecute the employee's claim in more than a perfunctory manner, the employee is permitted to institute a direct action against his *employer*, based upon a claimed breach of the union contract, without regard to any contractual requirement for arbitration. *Vaca v. Sipes, supra.*

Because such a claim against the employer is based upon the union contract, while the claim against the union is based upon its statutory duty to represent the employees in the bargaining unit, each claim is separate. Thus, an employee may maintain his action against his employer for breach of contract without joining the union. *Czosek v. O'Mara*, 397 U.S. 25, 90 S.Ct. 770, 25 L.Ed.2d 21 (1970); *Vaca v. Sipes, supra.*

Nevertheless, whether the union is joined as a party defendant or not, the employee's proof must be the same. In order to prevail against the employer, the employee:

> "must show not only that [his] discharge was contrary to the contract but must also carry the burden of demonstrating breach of duty by the Union." *Hines v. Anchor Motor Freight*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976).

In this case, the contract required any disciplinary penalty, including discharge, to be for "just cause." In his first claim for relief, plaintiff alleges that his claimed discharge was without just cause. His complaint also asserts that the contract procedures for arbitration were not exhausted because of the union's violation of its duty of fair representation.

While plaintiff's complaint is far from being a model of clarity, these allegations were sufficient, in our opinion, to state a claim under *Vaca v. Sipes, supra*, based upon defendant's alleged violation of the contract. Thus, the substantive law developed under § 301 would not preclude plaintiff from asserting this federal claim in the state court.

### C. The state claim for retaliation.

■ After the trial court entered its judgment in this case, the United States Supreme Court rendered its opinion in *Lingle v. Norge Division of Magic Chef, Inc.*, —— U.S. ——, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). In *Lingle*, the Supreme Court

specifically held that a state claim based upon retaliation by an employer against an employee who files a workmen's compensation claim is not pre-empted by § 301 or the *Allis–Chalmers* doctrine. That case is dispositive of the pre-emption issue raised here.

*Lingle* determined that a state claim is pre-empted under § 301 by a union contract's arbitration clause only if its adjudication would require the court to interpret the provisions of that contract. While proof of employer retaliation may also prove that there was no just cause under a union contract to justify the discipline imposed upon the employee, a state claim based upon a violation of the state's public policy may be adjudicated without reference to the employer's obligation under that contract.

Such a retaliation claim is based upon the employer's violation of a duty which finds its source elsewhere than in the contract; that duty arises out of a state's public policy. And, this is true even though the union contract may "contain information such as rate of pay and other economic benefits" that would be required to be considered in determining the damages to be awarded an employee prevailing upon such a state law claim. *Lingle v. Norge Division of Magic Chef, Inc., supra.*

Thus, if Colorado law recognizes a claim based upon the discharge of an employee in retaliation for his filing of a workmen's compensation claim, a subject considered below, nothing within either § 301 or the union contract would pre-empt the state courts from entertaining and adjudicating that claim.

II. The Timeliness of the Federal Claim

■ Defendant asserts that, even if plaintiff's complaint can be viewed as asserting a *Vaca v. Sipes* -type federal claim, nevertheless, the district court properly dismissed that claim because of the running of the appropriate statute of limitations. We disagree.

Section 301 does not set forth or refer to any statute of limitations. Therefore, the general rule would suggest that the most comparable state statute of limitations should be applied. *See United Automobile Workers v. Hoosier Cardinal Corp.,* 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966).

However, if the action is based upon an alleged violation of the union's duty of fair representation, the six-month period of limitations for the filing of unfair labor practice charges established by § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b) (1982), is to be applied, whether the claim is one asserted against the employer, the union, or both. *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983).

Such a claim against either the employer or the union accrues for limitation purposes when the employee actually learns, or through the exercise of reasonable diligence should have discovered, that the union is refusing to pursue his contractual grievance. *Hayes v. Reynolds Metals Co.,* 769 F.2d 1520 (11th Cir.1985); *Metz v. Tootsie Roll Industries, Inc.,* 715 F.2d 299 (7th Cir.1983), *cert. denied,* 464 U.S. 1070, 104 S.Ct. 976 79 L.Ed.2d 214 (1984).

Here, the only information before the court respecting the union's action comes from plaintiff. His affidavit asserts that the union initially advised him that nothing could be done for him under the contract until the matter of his workmen's compensation claim was finally resolved. Sometime after that claim was resolved, plaintiff filed a written grievance, but the union apparently refused to process the matter, and plaintiff filed his complaint with the trial court within six months' thereafter.

Based upon the foregoing showing, we cannot conclude, as a matter of law, that plaintiff's complaint was filed too late. Rather, further evidence upon the reasons for plaintiff's delay in filing his written grievance, the part played by the union in that delay, and the ultimate advice given

him by the union concerning his contractual claim will need to be presented before any conclusion upon this issue may be drawn.

### III. The Substance of the State Claim

■ Defendant also argues that a wrongful discharge claim, based upon an employer's retaliation against an employee for exercising his right to receive workmen's compensation benefits, is not recognized by Colorado law. Again, we disagree.

This court has previously concluded that an employer incurs liability to an employee by discharging that employee in violation of the state's public policy, if the public policy involved is reflected in a statute that creates a specific right or duty. *Cronk v. Intermountain Rural Electric Ass'n*, 765 P.2d 619 (Colo.App.1988). *See Montoya v. Local Union 111*, 755 P.2d 1221 (Colo.App. 1988). *Cf. Gamble v. Levitz Furniture Co.*, 759 P.2d 761 (Colo.App.1988) (no common law claim for wrongful discharge if statute provides its own remedy); *Corbin v. Sinclair Marketing, Inc.*, 684 P.2d 265 (Colo.App.1984) (claim cannot be based on mere general policy statements).

While this prior jurisprudence has emphasized that, in order for a claim to arise from an employee's discharge, there must be a "specifically enacted right or duty," the previous cases have not involved an employee's exercise of a statutory *right*. They have, rather, concerned either an employee's alleged refusal to *violate* the state's policy, *see, e.g., Cronk, supra,* or an employer's own alleged statutory violation. *See, e.g., Gamble v. Levitz Furniture Co., supra.* None have involved alleged retaliation against an employee because of that employee's exercise of a specific right granted to him by a Colorado statute. This case, however, presents such an assertion.

The statute at issue is the Workmen's Compensation Act of Colorado (the Act), §§ 8–40–101 through 8–66–112, C.R.S. (1986 Repl.Vol. 3B), which is designed to provide an employee, who is injured in the course and scope of his employment, medical treatment and compensation for the temporary and permanent loss of income resulting from the employee's temporary or permanent disability. The statutory scheme revealed in the Act is to require an employer, by insurance or otherwise, to provide for the benefits assured to his employees, and in return, an employee has as his sole remedy a claim pursuant to the Act. It is unlawful under the Act to require the employee to pay "all or any part of the cost" of providing such benefits. Section 8–44–101(1) and (2), C.R.S. (1986 Repl.Vol. 3B).

In the leading case of *Frampton v. Central Indiana Gas Co.*, 260 Ind. 249, 297 N.E.2d 425, 63 A.L.R.3d 973 (1973), it was noted that workmen's compensation acts, in general, are designed to substitute a system providing employees a right to compensation without regard to fault as a means of rectifying the harshness of the common law, under which some 80% of employees received no compensation for their job-related injuries. Under such acts, an employer has a publicly imposed duty to provide compensation to his employees for such injuries, and his employees have a statutory right to receive such compensation. This results in a statutory shifting of the economic burden for such injuries from the injured employee and his family to the employer and, ultimately, to the consuming public as a whole.

The *Frampton* court concluded, therefore, that to allow an employer to terminate the employment of an employee in retaliation for the employee's pursuit of a workmen's compensation claim would open the doors to "coercion and other duress-provoking acts," whereby employers could, by threat of retaliation, discourage or prevent employees from seeking the benefits due them and thereby undermine the fundamental purposes of the workmen's compensation system. Thus, it also concluded that public policy requires recognition of a common law claim by an employee for

wrongful discharge if the employee is discharged in retaliation for pursuing a workmen's compensation claim.

Many other courts have followed the lead of *Frampton*. Presently, Larson identifies 12 states that have judicially recognized such a claim; 17 states have enacted legislation to provide for the assertion of a claim based upon retaliation; and only five state courts have rejected such a claim. Of the latter five states, legislation in two has changed the initial judicial result. *See* 2A A. Larson, *Workmen's Compensation Law* § 68.36 (1988). *See also* Annot., 32 A.L.R.4th 1221 (1984).

We agree with the majority of the courts that have addressed this issue. We conclude that, since an employee is granted the specific right to apply for and receive compensation under the Act, an employer's retaliation against such an employee for his exercise of such right violates Colorado's public policy. And, the violation of such public policy provides the basis for a common law claim by the employee to recover damages sustained by him as a result of that violation.

Moreover, we reject defendant's suggestion, based upon the decisions in *Armstrong v. Goldblatt Tool Co.*, 242 Kan. 164, 747 P.2d 119 (1987) and *Brinkman v. State*, 729 P.2d 1301 (Mont.1986), that such a claim should be barred if the employment relationship is governed by a collective bargaining agreement. Both those opinions were announced prior to *Lingle, supra*.

Further, since the claim here recognized is based solely upon this state's public policy, it involves considerations of public importance that may not be presented by a claim based upon a private contract's definition of "just cause." As the Supreme Court noted in *Lingle, supra*, the duty of the employer to refrain from retaliation in violation of a state's public policy does not find its source in any private contract; it is a duty imposed by the state's legislative body; and it is one that cannot be adjusted or modified by the private actions of an employer and a collective bargaining agent.

While the interpretation and application of the terms of a collective bargaining agreement is an appropriate function for an arbitrator, the declaration and enunciation of a state's public policy properly rests within the jurisdiction of that state's judiciary.

Thus, we conclude that plaintiff's claim based upon defendant's alleged retaliation stated a proper claim under state law, which was not pre-empted by federal law. *See Lingle, supra*. The trial court erred in dismissing it.

The judgment is reversed and the cause is remanded to the district court for further proceedings consistent with the views set forth herein.

VAN CISE and STERNBERG, JJ., concur.