**Susan HOYT, Plaintiff–Appellee,**

v.

**TARGET STORES, DIVISION OF DAYTON HUDSON CORPORATION, Defendant–Appellant**

**No. 97CA0367.**

Colorado Court of Appeals,
Div. V.

Nov. 13, 1998.

Rehearing Denied Dec. 17, 1998.*

Certiorari Denied July 26, 1999.**

---

* TAUBMAN, J., would GRANT.

** Justice SCOTT does not participate.

Michael O'Malley, Denver, Colorado; Ronald A. Podboy, Denver, Colorado, for Plaintiff–Appellee

Faegre & Benson, LLP, Elizabeth A. MacDonald, Daniel Grossman, for Defendant–Appellant

Opinion by Judge ROTHENBERG.

In this action arising out of an employment dispute, defendant, Target Stores, Inc., (Target) appeals the judgment entered on a jury verdict finding it liable to plaintiff, Susan Hoyt, its former employee. We affirm in part and reverse in part.

After plaintiff was terminated by Target in June 1995, she filed this action alleging a number of claims, two of which went to trial. The jury returned a verdict in plaintiff's favor on both claims, awarding her $200,000 in compensatory damages and $35,000 in punitive damages for wrongful discharge in violation of public policy, and $15,000 in compensatory damages for breach of express covenant of good faith and fair dealing.

The evidence surrounding plaintiff's termination was highly disputed. Basically, Target contended that plaintiff had altered two

timecards in order to be paid for one and one-half hours of travel time to which she was not entitled. According to Target, this alleged "falsification" of company documents constituted gross misconduct and justified her immediate dismissal.

Plaintiff maintained that Target's stated reason for the termination was pretextual and that her termination was motivated by a dispute between her and a new supervisor over plaintiff's entitlement to travel time pay. She relied on the Colorado Wage Claim Act, §8–4–101, et seq., C.R.S.1998, which makes it unlawful for the agent of an employer to willfully refuse to pay a wage claim, or falsely deny the amount of a wage claim, or the validity thereof, "with intent to annoy, harass, oppress, hinder, delay, or defraud the person to whom such indebtedness is due...." Section 8–4–117, C.R.S.1998.

Plaintiff presented evidence at trial that she had worked for Target for thirteen years in a clerical capacity, that her duties had included payroll, that she was rated as an "outstanding" or "excellent" employee on all of her performance reviews until September 1994, when a new supervisor was hired, and that the new supervisor then began to downgrade her.

As to the specific incident that led to her termination, plaintiff's evidence indicated that: (1) by Target policy, she was entitled to be paid for one and one-half hours of time spent on May 4, 1995, and May 8, 1995, traveling to a Target store other than her regularly assigned store; (2) the supervisor had refused to pay plaintiff for that travel time; (3) plaintiff had not falsified the two timecards in question, but had corrected them to reflect accurately the hours to which she was entitled to be paid; (4) in making these changes, plaintiff had included some travel time on the May 4 timecard and some on the May 8 timecard, thus avoiding overtime for the week of May 4; and (5) because overtime was strongly disfavored by Target management, this procedure of "pushing time forward" was a cost-saving method routinely used by Target's employees and management alike to avoid overtime.

Also, plaintiff's evidence indicated that Target's policy regarding travel time was not administered in an even-handed manner by the supervisor; that other employees had followed a similar procedure to that used by plaintiff and had received compensation for similar travel time; the other employees had not been subjected to disciplinary actions; and the changes made by plaintiff in her timecards had saved Target money.

I.

Initially, we reject Target's contention that the trial court erred in denying its pretrial motion for summary judgment as to plaintiff's two successful claims for relief. The denial of a motion for summary judgment is not reviewable. *Feiger, Collison & Killmer v. Jones,* 926 P.2d 1244 (Colo.1996).

II.

■ Target contends that, because plaintiff's claim was not based on a sufficiently specific enunciation of public policy, the trial court erred in failing to direct a verdict in its favor on plaintiff's claim for wrongful discharge in violation of public policy. We disagree.

■ An at-will employee establishes a prima facie case of wrongful discharge if the employee shows that: (1) the employer directed the employee to perform an illegal act as part of the employee's work-related duties or prohibited the employee from performing a public duty or exercising an important job-related right or privilege; (2) the action directed by the employer would violate a specific statute relating to the public health, safety, or welfare, or would undermine a clearly expressed public policy relating to the employee's basic responsibility as a citizen or the employee's right or privilege as a worker; (3) the employee was terminated as a result of refusing to perform the act directed by the employer or for exercising the privilege to which the employee was entitled; and (4) the employer was aware or reasonably should have been aware that the employee's refusal to comply with the order or directive was based on the employee's reasonable belief that the action ordered was illegal, contrary to clearly expressed statutory policy relating to the employee's duty as a citizen, or viola-

tive of the employee's legal right or privilege as a worker. *See Martin Marietta Corp. v. Lorenz,* 823 P.2d 100 (Colo.1992); *Lathrop v. Entenmann's, Inc.,* 770 P.2d 1367 (Colo.App. 1989).

In *Crawford Rehabilitation Services, Inc. v. Weissman,* 938 P.2d 540 (Colo.1997), plaintiff alleged that she was terminated for calling the Colorado Division of Labor and complaining that her employer was attempting to eliminate her rest breaks. The supreme court rejected her claim that she had a public policy right to report such violations pursuant to §8–6–115, C.R.S. 1998. It noted that plaintiff's call to the division did not result in the initiation of an investigation or proceeding by the director, and concluded that plaintiff's wrongful discharge claim was *not* based upon clearly expressed public policy relating to an employee's basic rights or duties.

In so ruling, the court acknowledged that the public policy supporting such a claim was not "subject to precise definition," *Crawford Rehabilitation Services, Inc. v. Weissman, supra,* 938 P.2d at 552, but it described several situations in which actions do contravene public policy. These include: claims involving a matter affecting society as a whole, rather than the personal or proprietary interests of the parties; actions which strike at the heart of a citizen's social rights, duties, and responsibilities; and actions by an employer which lead to an outrageous result clearly inconsistent with a stated public policy. *See* Sabey & Moore, *Crawford's Balancing Test: At–Will Employment Versus Public Policy Wrongful Discharge,* 27 Colo. Law. 89 (November 1998).

The court emphasized that in order to justify interference into an employer's business decisions, discharge claims based upon public policy must concern behavior that truly impacts the public. *Compare Rocky Mountain Hospital v. Mariani,* 916 P.2d 519 (Colo.1996) (accountant discharged for refusing to use misleading accounting principles stated cognizable claim for wrongful discharge) *with Dyson v. District of Columbia Department of Employment Services,* 566 A.2d 1065 (D.C.App.1989) (discharge of worker for leaving assembly line to take medication in violation of employer's instructions did not constitute retaliatory discharge under workers' compensation statute).

The *Crawford* court rejected the employee's claim because it did not view the claim "that she was terminated for exercising a right either to call the division or to take rest breaks as one that truly impacts the public." *Crawford Rehabilitation Services, Inc. v. Weissman, supra,* 938 P.2d at 558.

Here, in contrast, the issue involved was the right of employees to be duly compensated by an employer under the Colorado Wage Claim Act, §8–4–101, et seq., C.R.S.1998, for time actually worked, which has been acknowledged to be an issue of major public and economic importance in Colorado. *See Morris v. Towers Financial Corp.,* 916 P.2d 678 (Colo.App.1996); *Porter v. Castle Rock Ford Lincoln Mercury,* 895 P.2d 1146 (Colo. App.1995).

Plaintiff presented evidence that her supervisor had directed her and other Target employees not to exercise their job-related rights to be paid for travel time from store to store, in violation of the Colorado Wage Claim Act, and that the real reason for her discharge was because she had exercised that right. Because such a right impacts the public at large, it is a considerably more significant claim of entitlement than the rest breaks involved in *Crawford.*

Target nevertheless asserts that plaintiff's termination was unquestionably justified by her falsification of the company's timecards and by her unauthorized exercise of "self-help." However, that assertion overlooks the fact that the jury in its verdict form specifically found that Target's action in firing plaintiff was *not* justified.

The jury also found in its verdict form that receiving payment for travel time was an important work-related right or privilege; that Target's instruction that plaintiff would not be paid for travel time prevented plaintiff from exercising an important work-related right or privilege; that Target had fired plaintiff because she refused to comply with the supervisor's instruction; and that Target's termination of plaintiff "was attended by circumstances of fraud or malice or willful

and wanton conduct," which justified an award of punitive damages.

These factual determinations by the jury are irreconcilable with Target's version of events.

As to Target's assertion that the employees as a whole, and plaintiff in particular, should have filed formal complaints about its travel pay policy with a governmental agency, plaintiff presented evidence that Target systematically discouraged its employees from exercising their statutory rights under the Colorado Wage Claim Act to be paid for all wages due, including payment for "all amounts for labor or service performed." Section 8–4–101(9), C.R.S. 1998 (defining "wages"). The evidence showed that Target's unwritten policy of discouraging such payments and its *sub silentio* policy of "looking the other way" made such formal complaints unnecessary and inadvisable. *Cf. Dyson v. District of Columbia Department of Employment Services, supra,* 566 A.2d at 1067 ("the formal filing of a claim may not be the only way an employee may acquire the protection of the retaliatory discharge provision [of the workers' compensation statute]"). *See* Sabey & Moore, *Crawford's Balancing Test: At–Will Employment Versus Public Policy Wrongful Discharge, supra,* 27 Colo. Law. at 91 (employee faced with an improper order ordinarily is required to "obey now, grieve, later," but if the obedience to the order would require the employee to forego a substantial, fundamental right, employee is entitled to disregard it.)

Thus, according to plaintiff's evidence, what Target characterizes as "self-help" was done as an accepted policy of the company and benefitted Target by allowing it to avoid paying overtime to its employees. Under such circumstances, a formal complaint to Target about its travel reimbursement policy would have been a futile gesture.

Further, while the plaintiff in *Crawford Rehabilitation Services, Inc. v. Weissman, supra,* did in fact file a complaint against her employer before bringing her action, we are unaware of any decision by the supreme court or any panel of this court holding that the formal filing of such a complaint by an employee is a prerequisite for a claim of wrongful discharge in violation of public policy. Target has also failed to cite authority for the proposition that the filing of a formal complaint against an employer is a condition precedent to an employee's claim of wrongful discharge in violation of public policy.

In summary, the Colorado Wage Claim Act clearly establishes as public policy that employees are entitled to be paid for the time they work. Because there was evidence, albeit disputed, that plaintiff was fired for asserting her rights under that Act, and because the supreme court has stated that such a claim is not "subject to precise definition," (*Crawford Rehabilitation Services, Inc. v. Weissman, supra,* 938 P.2d at 552, we conclude that its resolution here was properly left to the jury. ). *See* Sabey & Moore, *Crawford's Balancing Test: At–Will Employment Versus Public Policy Wrongful Discharge, supra,* 27 Colo. Law. at 91 (whether a given right "truly impacts the public" appears to be practical and fact-sensitive).

Accordingly, the trial court did not err in denying Target's motion for a directed verdict on her claim of wrongful discharge in violation of public policy.

### III.

■ Relying on *Gamble v. Levitz Furniture Co.,* 759 P.2d 761 (Colo.App.1988), Target next contends that plaintiff's common law claim for wrongful discharge in violation of public policy cannot prevail as a matter of law because the Colorado Wage Claim Act provides its own wrongful discharge claim for retaliation. We disagree.

In *Gamble,* plaintiff maintained he was wrongfully discharged because of his disability in violation of §24–34–402(1)(f)(I), C.R.S. 1998. A division of this court rejected his claim because the statute contained its own wrongful discharge remedy. The division concluded that the statutory remedy barred plaintiff's common law claim. But, *Gamble* has been distinguished in later cases involving violations of statutory claims.

In *Lathrop v. Entenmann's, Inc., supra,* plaintiff alleged that his discharge was in retaliation against him for exercising his

right to receive workers' compensation benefits. There, as here, the employer asserted that the workers' compensation statute provided the employee with an exclusive remedy, and the employer's argument was rejected by the panel.

The *Lathrop* court acknowledged *Gamble,* but distinguished it because it concerned the violation of an employer's own alleged statutory violation, and because it, along with other earlier cases, such as *Cronk v. Intermountain Rural Electric Ass'n,* 765 P.2d 619 (Colo.App.1988), had "not involved an employee's exercise of a statutory right." *Lathrop v. Entenmann's, Inc., supra,* 770 P.2d at 1372. The division in *Lathrop* concluded that, because an employer has a publicly imposed duty to provide compensation to its employees for injuries and employees have a statutory right to receive such compensation, plaintiff there had properly stated a claim for wrongful discharge in violation of public policy based upon the employer's retaliation against him.

Here, plaintiff alleged and presented evidence that she had been discharged in retaliation by her supervisor at Target because plaintiff had pursued an important work-related right based on a Colorado statute. She also presented evidence that Target employees were discouraged from seeking compensation for certain hours which they had worked, and that overtime was looked upon with disfavor by Target.

We are not persuaded by Target's argument that *Lathrop* is distinguishable because plaintiff here was fully paid and had not actually filed a claim pursuant to the Act. Plaintiff did not file a formal claim for unpaid wages because there were none, and the jury by its verdict necessarily determined that Target had penalized her by wrongfully discharging her and by alleging she had been dishonest and had violated company policy. Similarly, in its verdict the jury specifically rejected Target's theory that plaintiff had been fired for gross misconduct and for falsifying company documents.

To deny plaintiff a common law claim for her failure to perform a futile act because she had been fully paid would allow her employer to have dismissed her for what she asserted and showed was a pretextual reason. Accordingly, we reject Target's assertion that plaintiff's remedies were limited by the Colorado Wage Claim Act.

## IV.

However, we do agree with Target's contention that the trial court erred in failing to direct a verdict in its favor on plaintiff's claim for breach of express covenant of good faith and fair dealing.

Before trial, the court granted Target's motion for summary judgment as to plaintiff's implied contract and promissory estoppel claims because a conspicuous disclaimer in Target's employee handbook precluded an enforceable unilateral offer. The disclaimer admonished employees to "keep in mind that this is a handbook, not a contract. It doesn't guarantee you employment for any particular length of time, or limit how employment may end."

However, the court permitted plaintiff to proceed on her claim for breach of express covenant of good faith and fair dealing. It also clarified that she had the burden of proving Target had created an enforceable promise independent of the company's manual.

In *Decker v. Browning–Ferris Industries of Colorado, Inc.,* 931 P.2d 436 (Colo.1997) (*Decker I*) and *Decker v. Browning–Ferris Industries of Colorado, Inc.,* 947 P.2d 937 (Colo.1997) (*Decker II*), the Colorado Supreme Court affirmed judgments in favor of two employees for substantial sums, based on jury verdicts finding that their employer had violated an express covenant of good faith and fair dealing. In doing so, however, the supreme court did not determine whether such a claim was recognized in Colorado nor whether the factual circumstances relied on by plaintiffs in those two cases supported the finding of a violation of the covenant. Rather, the court noted that the issue whether there is an express covenant of good faith claim in the employment context had not been presented to it. *See* Criswell, *Recent Employment Law Developments In Colorado,* 27 Colo. Law. 5 (May 1998).

Both *Decker I* and *Decker II* stand only for the proposition that, if a claim based on the violation of an express covenant of good faith is to be recognized, such a claim is a contractual one. It is not one sounding in tort. *See* Criswell, *Recent Employment Law Developments In Colorado, supra.*

■ Whether an alleged promise is claimed to be part of an express contract or is asserted as the basis for the application of promissory estoppel, it must be sufficiently specific so that the judiciary can understand the obligation assumed and enforce the promise according to its terms. *Soderlun v. Public Service Co.,* 944 P.2d 616 (Colo.App. 1997).

Thus, in order to constitute an enforceable promise, a statement by the employer must meet two requirements. It must disclose a promissory intent or be one that the employee could reasonably conclude constituted a commitment by the employer. If it is merely a description of the employer's present policies, it is neither a promise nor a statement that can reasonably be relied upon. In addition, the employer's statement must be sufficiently definite to allow a court to understand the nature of the obligation undertaken. *Soderlun v. Public Service Co.,* supra.

■ Assurances of fair treatment or "mere vague assurances" are unenforceable. *Vasey v. Martin Marietta Corp.,* 29 F.3d 1460, 1465 (10th Cir.1994).

Here, after plaintiff presented her evidence at trial, Target moved for a directed verdict as to plaintiff's claim for breach of the express covenant of good faith and fair dealing. The court denied the motion, concluding that plaintiff had shown an independent contract apart from Target's policy and procedure manual.

The trial court based its ruling on the testimony of a former human resources manager who had been employed by Target until November 1994, and who testified that Target managers had employed "industrial due process" to "keep fair and consistent policy

throughout the store." The witness stated that:

> If you are consistent and you make sure you treat everybody the same, fairness follows right behind it. And that's what we wanted to do in industrial due process was to make sure everybody was treated the same.

■ However, the witness' promise, made when she worked for Target, merely described Target's policies at that time. Because a vague assurance of fair and consistent treatment cannot form the basis of an express covenant of good faith and fair dealing, and the statement here constituted such a vague assurance, we conclude as a matter of law that there was no underlying contract. *See Vasey v. Martin Marietta Corp., supra; Poff v. Western National Mutual Insurance Co.,* 13 F.3d 1189, 1191 (8th Cir.1994) (statement in employee manual that, "[w]e pride ourselves on treating our employees fairly and in a consistent manner," not sufficiently definite to permit jury to find an express covenant of good faith and fair dealing).

Therefore, the trial court erred in not granting Target's motion for directed verdict on her claim of breach of express covenant of good faith and fair dealing.

The portion of the judgment awarding plaintiff compensatory and punitive damages based on the wrongful discharge claim is affirmed. The portion of the judgment based on breach of express covenant of good faith and fair dealing is reversed.

Judge TURSI,*** J., concurs.

Judge TAUBMAN concurs in part and dissents in part.

Judge TAUBMAN concurring in part and dissenting in part.

Because I believe the trial court missed the mark by failing to direct a verdict in favor of defendant, Target Stores, (Target), on the claim of plaintiff, Susan Hoyt, for wrongful discharge in violation of public policy, I disagree with Part II of the majority's

*** Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3),

and § 24–51–1105, C.R.S.1998.

opinion. Hence, I would reverse the judgment in its entirety.

My review of our appellate decisions leads me to conclude that a claim for wrongful discharge in violation of public policy may not be predicated upon the self-help actions of an employee, even if the employee's actions are intended to vindicate her rights under the Colorado Wage Claim Act, §8–4–101, et seq., C.R.S.1998.

The majority holds that Hoyt established a claim for wrongful discharge in violation of public policy by showing that Target prohibited her from performing a public duty or exercising an important job-related right or privilege—enforcing her rights under the Wage Claim Act. In my view, however, Hoyt failed to establish a prima facie case of wrongful discharge in violation of public policy on this or any other basis enunciated by our courts for such a claim.

In *Crawford Rehabilitation Services, Inc. v. Weissman,* 938 P.2d 540, 552 (Colo.1997), the supreme court stated:

The public policy exception is grounded in the notion that an employer should be prohibited from discharging an employee with impunity for reasons that contravene widely accepted and substantial public policies. Although public policy wrongful discharge is not subject to precise definition, it has been variously described as an action that involves a matter that affects society at large rather than a purely personal or proprietary interest of the plaintiff or employer, ... leads to an outrageous result clearly inconsistent with the stated public policy ... or strikes at the heart of a citizen's social rights, duties and responsibilities.

The *Crawford* court characterized prior decisions as recognizing claims for wrongful discharge in violation of public policy in two categories: (1) terminating an employee for refusing to engage in unlawful or unethical conduct and (2) terminating an employee for exercising a job-related right.

Here, I agree with the majority that vindicating claims under the Colorado Wage Claim Act involves a matter that affects society at large rather than a purely personal or proprietary interest. *See Morris v. Towers Financial Corp.,* 916 P.2d 678 (Colo.App. 1996) (Wage Claim Act provides clear, comprehensive statutory scheme designed to require employers to pay wages earned by their employees in a timely manner); *Porter v. Castle Rock Ford Lincoln Mercury, Inc.,* 895 P.2d 1146 (Colo.App.1995) (plaintiff who prevails on Wage Claim Act claim is entitled to recover attorney fees to vindicate purpose of Act, even if defendant employer prevails on negligence counterclaim). *Cf. Crawford Rehabilitation Services, Inc. v. Weissman, supra* (interest in assuring rest breaks as provided under Colorado Wage Claim Act is largely personal, rather than a matter that affects society at large).

However, I dissent because I believe a claim for wrongful discharge in violation of public policy must be based upon an employee's complaint to a governmental agency or a complaint to the employee's supervisor concerning the employer's challenged conduct. Here, Hoyt did neither.

Even viewing the evidence in the light most favorable to Hoyt, I do not believe the circumstances here satisfy the requirement for an employee exercising a job-related right.

In *Crawford Rehabilitation Services, supra,* the supreme court cited *Lathrop v. Entenmann's, Inc.,* 770 P.2d 1367 (Colo.App. 1989) for the proposition that a wrongful discharge public policy claim may be based upon an employee's termination for exercising a job-related right. In *Lathrop,* a division of this court held that an employee stated a claim for wrongful discharge in violation of public policy when he alleged that he was discharged in retaliation for filing a workers' compensation claim.

Here, in contrast, Hoyt did not file any claim with the Division of Labor or any other governmental agency. She did even less than the plaintiff in *Crawford Rehabilitation Services, supra,* who did complain to the Division of Labor about lack of rest breaks, but whose complaint did not result in the initiation of an investigation or proceeding by the Director of the Division of Labor.

Rather, here, Hoyt altered timecards without supervisor approval. She was not discharged in retaliation for complaining to any governmental agency about the procedures which Target required her to follow for completing timecards for travel between stores.

We ought not to establish a claim for wrongful discharge in violation of public policy which rewards an employee for engaging in self-help. *See Dyson v. District of Columbia Department of Employment Services*, 566 A.2d 1065 (D.C.App.1989) (worker's unauthorized act of self-help in stopping work in order to take medication was not a claim for compensation under District's workers' compensation act); *cf. People v. Pittam*, 194 Colo. 104, 572 P.2d 135 (1977) (in attorney disciplinary proceeding, respondent's taking money as self-help measure because he felt he had been unfairly dealt with by his partners did not excuse his professional misconduct but was properly considered as a mitigating circumstance).

Further, the majority's reliance on *Dyson* is misplaced. The *Dyson* court did state that the formal filing of a claim with a governmental agency may not be the only way an employee may acquire the protection of a retaliatory discharge provision under the District of Columbia's workers' compensation statute. However, the court then cited as a supporting example another case in which an employee had instituted a claim under the Texas workers' compensation statute by reporting his injury to the employer. Here, of course, Hoyt neither filed a claim with a governmental agency nor complained to her employer about Target's travel reimbursement policy.

By recognizing a claim for wrongful discharge in violation of public policy in these circumstances, the majority pursues a course of action that will operate to reward employees who choose to take employment disputes into their own hands, rather than pursue established avenues of relief, such as complaints to relevant governmental agencies or company supervisors.

As noted above, Hoyt's circumstances do not fit within any of the other circumstances in which our appellate courts have recognized a claim for wrongful discharge in violation of public policy. She was not terminated for refusing to perform an act directed by her employer. *See Rocky Mountain Hospital & Medical Service v. Mariani*, 916 P.2d 519 (Colo.1996). Nor was she directed to perform an illegal act as part of her work-related duties.

Further, Hoyt's actions are distinguishable from the circumstances in *Martin Marietta Corp. v. Lorenz*, 823 P.2d 100 (Colo.1992), where a wrongful discharge in violation of public policy claim was found to exist under circumstances in which the plaintiff had refused to engage in acts of deception and misrepresentation concerning the quality of materials used by his employer in designing equipment for the National Aeronautics and Space Administration. Unlike in *Lorenz*, Hoyt did not express her concerns to her superiors, but simply exercised self-help and altered time records based upon her belief as to the correctness of her interpretation of the Colorado Wage Claim Act.

I would further hold that, even if Hoyt had a reasonable belief that Target was violating the provisions of the Wage Claim Act, she was required to express her concerns to her superiors or file a complaint with a governmental agency, and that she may not predicate a claim of wrongful discharge in violation of public policy on actions which may fairly be characterized as self-help.

I conclude with the cautionary statement of the supreme court in *Crawford Rehabilitation Services, Inc. v. Weissman, supra*, 938 P.2d at 553:

> Not all potential sources of public policy are of sufficient gravity to outweigh the precepts of at-will employment. We must develop the common law in this area with care.

Accordingly, I dissent as to Part II of the majority's opinion, and, for that reason, would not reach the issue addressed in Part III. Otherwise, I concur with Parts I and IV of the majority opinion. Hence, I would reverse the judgment in its entirety.