Kim DYSON, Petitioner,

v.

DISTRICT OF COLUMBIA DEPART-
MENT OF EMPLOYMENT
SERVICES, Respondent.

Washington Hospital Center,
Intervenor.

No. 88-952.

District of Columbia Court of Appeals.

Argued Sept. 14, 1989.
Decided Nov. 30, 1989.

Richard W. Galiher, Jr., Rockville, Md.,
for petitioner.

Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., entered an appearance, for respondent.

John C. Duncan, III, Washington, D.C.,
for intervenor.

Before STEADMAN, SCHWELB and
FARRELL, Associate Judges.

STEADMAN, Associate Judge:

Petitioner was discharged from his employment when, despite his supervisor's instructions, he failed to attend to his duties at an assembly line while seeking leave to take medication for an injury he had previously sustained on the job. The Director of the Department of Employment Services ("DOES"), rejecting a hearing examiner's recommendation, concluded that the facts in the record did not establish a case of retaliatory discharge in violation of the District of Columbia Workers' Compensation Act, D.C.Code §§ 36–301 *et seq.* (1988 Repl.) (the Act). We affirm.

I

Petitioner Kim Dyson was an employee at Washington Hospital Center (the "Hospital"). His job involved attending to trays on a conveyor belt. On September 12, 1983, petitioner slipped and fell at work, sustaining a low-back injury, for which he filed a workers' compensation claim on September 22, 1983. In late October 1983, while petitioner was at his work station, he asked his supervisor to be excused to take medication for his back pain.[1] The supervisor refused to stop the belt although petitioner asked him several times to do so. The supervisor ordered petitioner to keep picking up trays and not to stop the belt. The conveyor belt stopped when petitioner did not pick up a tray.[2] The supervisor then left to get a higher-ranking supervi-

---

1. The record contains considerable testimony, not always in total accord, as to what transpired. The hearing examiner's findings of fact essentially consist of a recitation of the testimony of each witness, without reconciling any differences. The factual recitation set forth in this opinion is taken mainly from the "Statement of Facts" in petitioner's brief.

2. The "Statement of the Case" in petitioner's brief states that "Claimant's employment was terminated because the Claimant stopped the food tray conveyor belt after requesting the supervisor's permission to take medication for his back pain."

sor. When the two returned, petitioner had already walked to the water fountain and taken his medication. The following work day, at the suggestion of the immediate supervisor, another hospital authority discharged petitioner from employment on the stated ground of insubordination.

Petitioner brought an administrative action in the DOES against the Hospital, alleging that the discharge was an unlawful retaliation under D.C.Code § 36–342 (1988 Repl.), which provides in pertinent part:

> It shall be unlawful for any employer or his duly authorized agent to discharge or in any other manner discriminate against an employee as to his employment because such employee has claimed or attempted to claim compensation from such employer....

Petitioner sought back pay for the period during which he had been terminated.[3]

The hearing examiner recommended that petitioner be awarded back pay for what he held to be a retaliatory discharge. He found that petitioner's supervisor and the authority who discharged petitioner both knew of petitioner's back pain and of his request to leave the conveyor belt to take medication.[4] The hearing examiner understood petitioner's act of "seeking to leave the food line to take medication" as an attempt to claim compensation under the

Act and thus found that he was the victim of an impermissible retaliatory discharge.[5]

In the Final Compensation Order, however, the Director of DOES rejected the hearing examiner's conclusion that petitioner's discharge was retaliatory. Relying on a prior DOES decision, *Lyles v. Washington Metro. Area Transit Auth.*, H & AS No. 83–46, Amended Final Compensation Order (February 29, 1988), the Director articulated the standard for determining whether a retaliatory discharge has taken place as whether the discharge "was motivated by 'animus' towards the claimant which resulted wholly or only in part from the claimant's pursuit of a worker's compensation claim." The Director observed that petitioner was discharged "for in essence causing a brief work delay as he attempted to take medication for a job related injury."[6] As we understand his decision, the Director did not accept the view that petitioner's actions here per se constituted a claim or attempted claim for compensation under the Act. To the contrary, the Director concluded that while the record evidence supported the finding that petitioner was fired because of his efforts to take medication, this fact alone did not establish that the employee was attempting to claim compensation under the Act or that the employer was retaliating for an attempt to claim compensation under the Act.[7]

---

3. Section 36–342 provides that in the case of its violation, the employee "shall be restored to his employment and shall be compensated by his employer for any loss of wages arising out of such discrimination." In this case, petitioner had already been reinstated sometime prior to the middle of 1984 as a result of a proceeding that his union brought against the Hospital alleging violations of a collective bargaining agreement.

4. The hearing examiner did not state that these personnel knew that petitioner had filed a workers' compensation claim on September 22, 1983.

5. Petitioner claims that these constituted findings of fact by which the Director was bound if supported by substantial evidence. *Dell v. Dep't of Employment Servs.*, 499 A.2d 102, 105 (D.C. 1985); D.C.Code § 36–322(b)(2) (1988 Repl.). As our opinion indicates, however, the central issue is one of law—*viz.*, whether petitioner's essentially undisputed action here constituted a

"claim" or "attempted claim" for compensation under the Act.

6. Although the hearing examiner stated that petitioner was discharged for "seeking to leave the food line," any realistic reading of the record confirms the Director's view that petitioner's refusal to continue working while pursuing that request and the consequent stoppage of the food line were the integral components leading to his discharge.

7. The Director acknowledged that with additional evidence, the requisite animus or intent could be established, such as if "the supervisor who initiated the firing uttered such words as 'I'll teach you to file a workers' compensation claim'" or if "claimant submitted evidence that employer engaged in a pattern and practice of discriminating against other of its employees who filed workers' compensation claims." Such additional evidence would be necessary even though, as the Director suggested, the discharge may have been "unreasonable."

## II

In reviewing the decision of an agency responsible for executing a particular statute, we defer to that agency's interpretation of the statute unless it is "unreasonable in light of the prevailing law, inconsistent with the statute, or plainly erroneous." *Pub. Employees Relations Bd. v. Washington Teachers' Union Local 6*, 556 A.2d 206, 207 (D.C.1989) (citations omitted). In this case, the question presented is whether the Director's interpretation, in effect, of the phrase "has claimed or attempted to claim compensation" in section 36–342 of the Act as not to encompass, standing alone, all unauthorized acts relating to medical treatment sought or undertaken unilaterally by the employee while at work is reasonable.[8] We conclude that it is.

Under the Act, to be sure, a claim for compensation is not limited to a claim for money payment. Section 36–307(a) states that the employer shall be required to "furnish such medical ... services ... as the nature of the injury or the process of recovery may require." *See, e.g., Medical Associates of Capitol Hill v. District of Columbia Dep't of Employment Servs.*, 565 A.2d 86 (D.C.1989).[9] Furthermore, the formal *filing* of a claim may not be the only way an employee may acquire the protection of the retaliatory discharge provision. In *Texas Steel Co. v. Douglas*, 533 S.W.2d 111, 114, 115 (Tex.Civ.App.1976),

for example, the court found that an employee had "instituted a proceeding" for purposes of the Texas statute by reporting his injury to the employer and receiving workers' compensation benefits from the insurer. *See also* 2A A. LARSON, THE LAW OF WORKMEN'S COMPENSATION § 68.36(a), at 13–183 (1989) (there may be "controversy" as to "what kind of action by the employee is necessary to trigger the act's protection"). These authorities do not establish, however, that every act by an employee ostensibly in pursuance of compensation benefits constitutes a claim or attempted claim for compensation.[10]

It is altogether reasonable to conclude that the Act does not contemplate protection of unauthorized unilateral action by the employee but instead establishes procedures by which an injured worker is to seek compensation from his employer. Section 36–320, for example, establishes the procedures for filing claims and submitting to medical examinations; Section 36–314 establishes the time for filing claims; Section 36–315 establishes a compensation payment schedule; Section 36–307 establishes procedures by which the employee selects an attending physician. The Mayor's regulations implementing the Workers' Compensation Act suggest, furthermore, that not every act by an employee in pursuit of medical treatment is a "claim" or "attempted claim" for compensation. The regulations define a claim as "an *application for*

---

**8.** We note that petitioner has not proceeded on the theory that his employer discharged him in retaliation for his actual filing of a workers' compensation claim on September 22, 1983. Petitioner's theory on appeal is that the discharge was retaliatory because it was made in response to the assembly line incident.

**9.** However, as the case illustrates, the statute and regulations provide detailed mechanisms for obtaining such medical services.

**10.** *Texas Steel Co., supra,* 533 S.W.2d 111, it should be noted, differs from this case in that there is no dispute here that petitioner had instituted a proceeding under the Act. Petitioner filed a claim on September 22, 1983. At issue here is only whether petitioner's act of seeking to leave his work station to take medication was itself another claim protected by the Act.

Not all courts, moreover, have interpreted statutory language concerning claims or proceedings equally broadly. In *Genheimer v.*

*Clark Grave Vault Co.,* 70 Ohio App.2d 65, 434 N.E.2d 744 (1980), the court held that an employee had not "filed a claim or instituted [or] pursued ... proceedings" under the Ohio statute, *id.* 434 N.E.2d at 745–46, when the employer, which insured itself, knew of his injuries, completed two accident reports, referred the employee to a hospital and even discussed filing a claim with the employee's doctor. *Id.* at 746. The court found that the only two ways to institute or pursue proceedings were by filing or, "in the case of a self-insured employer, [by] the election of the employer to pay compensation or benefits directly with knowledge of a compensable injury" (statutory citation omitted). *Id.* at 747. The court thus rejected the employee's contention that "conduct reasonably connected with the establishment of a Workers' Compensation claim" is necessarily protected. *Id.* at 745.

benefits made by an injured employee or his or her beneficiary" under §§ 36–308 & 36–309 of the Act. 7 DCMR § 299.1 (1986) (emphasis added).

These provisions indicate that the Act contemplates an orderly scheme by which employees may obtain compensation and medical services. Petitioner's unauthorized act of self-help was not pursuant to any procedures recognized by the Act. The Director reasonably concluded, therefore, that the Hospital's discharge of petitioner for failure to attend to the food line, however wrongful it may otherwise have been, *see supra* note 3, was not in and of itself sufficient proof of discrimination against petitioner for having "claimed or attempted to claim compensation" under the Act.

*Affirmed.*