Phyllis D. LYLES, Petitioner,

v.

DISTRICT OF COLUMBIA DEPART-
MENT OF EMPLOYMENT
SERVICES, Respondent.

No. 88–232.

District of Columbia Court of Appeals.

Argued Nov. 30, 1989.
Decided March 16, 1990.

Eric M. May, with whom Jeffrey V.
Nackley, Washington, D.C., was on the
brief, for petitioner.

Edward E. Schwab, Asst. Corp. Counsel,
with whom Frederick D. Cooke, Jr., Corp.
Counsel at the time the brief was filed,
Charles L. Reischel, Deputy Corp. Counsel,
and Martin B. White, Asst. Corp. Counsel,
Washington, D.C., were on the brief, for
respondent.

Before ROGERS, Chief Judge,
FARRELL, Associate Judge, and
GALLAGHER, Senior Judge.

FARRELL, Associate Judge:

Petitioner contests a determination by
the Director of the Department of Employ-
ment Services (DOES) that her discharge
from employment was not in retaliation for
claiming compensation under the District
of Columbia Workers' Compensation Act,
D.C.Code §§ 36–301 to –345 (1988) (the
Act). Because we agree with the Director
that petitioner failed to establish that her
discharge was motivated by a retaliatory
animus, we affirm the denial of reinstate-
ment and back pay.

I.

Petitioner, a special police officer em-
ployed by Washington Metropolitan Area
Transit Authority (WMATA) since 1975, in-
jured her left foot while patrolling WMA-
TA's premises on March 12, 1983. Follow-
ing hospital emergency room treatment,
she visited Dr. Oscar Rodriguez who diag-
nosed a sprain and advised her to stay off
the foot. At a second visit on April 8, 1983,
Dr. Rodriguez advised her to return to
work in a week. Petitioner was also exam-
ined twice by Dr. Maurice Sislen, WMA-
TA's medical director, who, following the
second visit, instructed her to return to
work on June 10. Dr. Rodriguez, in the
meantime, had referred petitioner to a podi-
atrist, Dr. Abraham Coster, for treatment
of a non-work-related callous formation.
Petitioner saw Dr. Coster repeatedly in
May and June, and apparently on the basis
of his opinion that she was still suffering
effects of the work-related injury, she re-

fused to heed the instruction of Dr. Sislen to return to work. WMATA, relying on company policy and its Labor Agreement with the employee union, which permitted termination of a special police officer who remained absent without excuse for three or more consecutive days, discharged petitioner shortly after June 14.

Following a hearing on petitioner's claim for workers' compensation, a hearing examiner found that petitioner's work-related disability ended on April 15, 1983, rejecting the testimony of Dr. Coster that the effects of the injury persisted thereafter. The examiner also accepted Dr. Rodriguez' testimony that he had referred petitioner to Dr. Coster only for a non-work-related callous formation. Despite these findings, the examiner also concluded that at the time petitioner refused to return to work in June she was receiving treatment from Dr. Coster, and "it was claimant's as well as Dr. Coster's *position* that claimant was being treated for a work-related injury" (emphasis added). Reasoning that "[t]he essence of claiming compensation is the *allegation* that the employee is unable to work because of a work-related injury" (emphasis added), the examiner determined that petitioner's apparent good faith belief (relying on Dr. Coster's opinion) that she could not return to work precluded the employer from discharging her without violating the retaliatory discharge provision of the Act, D.C.Code § 36–342.[1] The examiner therefore ordered petitioner restored to employment and compensated for lost wages arising from the discharge.

On WMATA's administrative appeal, the Director rejected this rather improbable interpretation of the retaliatory discharge provision. According to the Director, "the Hearing Examiner's finding and conclusion of retaliatory discharge was based *solely*

upon her interpretation of the law that in essence an employer could not discharge an employee who refused to return to work because of a claimed work-related disability" (emphasis in original). The Director concluded "that neither the language nor intent of the Act supports the Hearing Examiner's legal conclusion." While the Director found substantial evidence to support the hearing examiner's factual finding ·that petitioner had been fired for failing to return to work when directed to do so by Dr. Sislen, the Director "disagree[d] with the Hearing Examiner's legal conclusion that that fact alone establishes a case of retaliatory discharge in violation of the [Act]."

Turning to the question of what would constitute a *prima facie* adequate showing of retaliatory discharge, the Director looked to the companion provision of the federal Longshore and Harbor Workers' Compensation Act[2] and determined that a violation of § 36–343 requires (a) a decision by the employer to terminate the claimant's employment, (b) motivated by animus against the employee resulting wholly or in part from the employee's pursuit of rights under the Act. *See, e.g., Geddes v. Benefits Review Bd.*, 236 U.S.App.D.C. 381, 384, 735 F.2d 1412, 1415 (1984). The Director concluded that "firing a claimant who refuses to return to work due to a claimed work-related injury does not by itself satisfy the 'animus' requirement." The Director agreed with Professor Larson that, in the nature of things, evidence of retaliatory intent ordinarily would be circumstantial rather than direct,[3] but on review of the record could find "no evidence" to support a finding that petitioner's discharge had stemmed even partly from animus against her by the employer for pursuing a workers' compensation claim.[4]

---

1. The examiner declared: "[O]rdering claimant to return to work and discharging her for failing to do so placed claimant in the position of either losing her job or foregoing her claim that she was unable to work because of a work-related injury."

2. 33 U.S.C. §§ 901–950 (1982).

3. 2A A. LARSON, THE LAW OF WORKMEN'S COMPENSATION § 68.36(c), at 13–187 (1989).

4. The Director had previously issued an order to similar effect which petitioner appealed to this court. On October 29, 1985, we remanded the matter to the Director for reconsideration in light of our recent decisions in *Dell v. Dep't of Employment Servs.*, 499 A.2d 102 (D.C.1985), and *George Hyman Const. Co. v. District of Columbia Dep't of Employment Servs.*, 498 A.2d 563 (D.C.1985), which had set forth standards governing the degree of deference the Director

## II.

■ D.C.Code § 36–342, entitled "Retaliatory actions by employer prohibited," states in relevant part:

It shall be unlawful for any employer or his duly authorized agent to discharge or in any other manner discriminate against an employee as to his employment because such employee has claimed or attempted to claim compensation from such employer....

As the statute makes apparent, to establish a *prima facie* case for a retaliatory discharge the employee must prove: (a) that she made or attempted to make a claim for workers' compensation; and (b) that she was discharged or otherwise discriminated against in retaliation for making that claim. *See Galante v. Sandoz, Inc.,* 192 N.J.Super. 403, 407, 470 A.2d 45, 47 (Law Div. 1983), *aff'd,* 196 N.J.Super. 568, 483 A.2d 829 (App.Div.1984) (construing similarly worded statute). The first question for decision, therefore, is whether petitioner had claimed or attempted to claim compensation by the time WMATA discharged her. We conclude that she had.

Recently, in *Dyson v. District of Columbia Dep't of Employment Servs.,* 566 A.2d 1065 (D.C.1989), our first reported decision construing § 36–342, we considered this question in the case of an employee who, contrary to his supervisor's order, had left his work station at a food conveyor belt to take medication for an injury previously sustained on the job. Following his discharge for insubordination, he brought an administrative action under § 36–342, asserting that his act of leaving the food line to take medication was an "attempt to claim compensation under the Act," *id.* at 1066, and hence could not be a proper basis for his discharge. The Director rejected this assertion and on review we sustained that determination.

We framed the issue as to whether the Director reasonably could construe the phrase "has claimed or attempted to claim compensation" in § 36–342 so as "not to encompass, standing alone, all unauthorized acts relating to medical treatment sought or undertaken unilaterally by the employee while at work...." *Id.* at 1067. We acknowledged that "a claim for compensation [under the Act] is not limited to a claim for money payment," and that "the formal *filing* of a claim may not be the only way an employee may acquire the protection of the retaliatory discharge provision." *Id.* (emphasis in *Dyson*). We held, nevertheless, that it was reasonable for the Director to conclude "that the Act does not contemplate protection of unauthorized unilateral action by the employee but instead establishes procedures by which an injured worker is to seek compensation from his employer." *Id.* We noted, for example, that regulations implementing the Act define a claim "as 'an *application* for benefits made by an injured employee or his or her beneficiary' under §§ 36–308 & –309 of the Act" (emphasis in *Dyson*), and that "[p]etitioner's unauthorized act of self-help was not pursuant to any procedures recognized by the Act." *Id.* at 1067–68. Consequently, the employer's discharge of the petitioner for failure to attend to the food line was not by itself sufficient proof of discrimination for having "claimed or attempted to claim compensation" under the Act.

■ At first glance, *Dyson* does not appear to be very different from this case. In *Dyson* the employee's "attempt to claim" compensation consisted of leaving his work station without authorization to take medication; in the present case, petitioner's attempted claim—as found by the hearing examiner—consisted of refusing instructions to return to work believing she was still suffering the effects of a work-related injury. That action by itself does not seem materially closer to an attempt to apply for benefits under the Act than the conduct in *Dyson.* There are, however, significant differences between this case

must accord hearing examiners' findings of fact. In light of her conclusion that the examiner's finding of retaliatory discharge was not a factual finding at all but rather an erroneous legal

conclusion, the Director determined that neither *Dell* nor *Hyman* provided any reason to reverse her previous decision.

and *Dyson*. In that case we noted, 566 A.2d at 1066 n. 4, that there had been no finding that the employer knew prior to the discharge that the employee had filed an actual workers' compensation claim for the injury that prompted him to leave his work station. In the present case, although the examiner also made no such finding, it is apparent on the record, and not disputed, that petitioner had filed a workers' compensation claim with WMATA for the March 12 injury well before her discharge in June, and that the WMATA official (Inspector Sines) who recommended her discharge was aware that she was claiming disability for the injury.[5] Moreover, in response to petitioner's claim, WMATA's medical director, Dr. Sislen, examined her in April 1983. *See* D.C.Code § 36–307(d) (right of employer to have its physician examine claimant). Finally, unlike the employee in *Dyson* whose conduct we characterized as "self-help", petitioner refused to return to work in conceded good faith reliance on the opinion of Dr. Coster (later discredited by the examiner) that she was still suffering from a work-related injury. In these circumstances, unlike in *Dyson*, we are satisfied that petitioner's refusal to obey the instruction to return to work amounted to an "attempt to claim compensation" under the Act and hence that she "acquire[d] the protection of the retaliatory discharge provision." *Dyson, supra,* 566 A.2d at 1067.

 To say, however, that petitioner's refusal to resume work brought her within the protection of § 36–342 does not answer the question whether the employer discharged her in retaliation for her refusal and so violated the statute. The Director construed the statute to require proof that,

in discharging (or otherwise discriminating against) an employee, the employer "must be motivated by animus against the employee because of employee's pursuit of his rights...." (quoting *Geddes v. Benefits Review Bd., supra,* 236 U.S.App.D.C. at 384, 735 F.2d at 1415). As we did in *Dyson, supra,* 566 A.2d at 1068, we defer to that reasonable interpretation of the statute. The Director went on to conclude that "firing a claimant who refuses to return to work due to a claimed work-related injury does not by itself satisfy the 'animus' requirement." That conclusion seems to us almost self-evident. A contrary conclusion would make the employer a virtual guarantor of continued employment.[6] Rather, as we said in *Dyson, supra,* 566 A.2d at 1066 n. 7, quoting the Director with apparent approval, the required animus entails some additional showing beyond the firing, such as evidence of a pattern and practice of discriminating against employees filing compensation claims.

The Director found no evidence in this case "which could support a finding that claimant's firing was motivated wholly or in part by the requisite animus necessary to make out a *prima facie* case of retaliatory discharge." As there is substantial support in the record for that determination, we may not disturb it. D.C.Code § 1–1510(a) (1987); *Becker v. District of Columbia Dep't of Consumer and Regulatory Affairs,* 518 A.2d 93, 94 (D.C.1986). WMATA discharged petitioner relying on company policy and the three-day unauthorized absence provision of the Labor Agreement after its medical director, Dr. Sislen, found petitioner fit to return to work and instructed her to do so.[7] Whether or not

---

5. A March 24, 1983 letter to petitioner from a Claims Representative with the National Loss Control Service Corporation (NATLSCO), which handled workers' compensation claims on referral from WMATA, indicated that NATLSCO had received notice of petitioner's accident and instructed her, *inter alia,* to put her claim number on all correspondence. In his deposition, Inspector Sines answered affirmatively the question: "You were aware ... that [petitioner] was claiming disability, because of her ... alleged Workers' Compensation injury; is that correct?"

6. As the Director pointed out, even when an employee has been shown to have been the victim of a retaliatory discharge, § 36–342 goes on to provide that the employer is not obligated to restore him to employment and compensate him for lost wages "if such employee ceases to be qualified to perform the duties of his employment...."

7. Dr. Rodriguez, petitioner's first treating physician, had also found petitioner fit to resume work, and the claims adjuster who processed petitioner's disability claim was aware of that fact. It is therefore reasonable to assume that

that action was justified under the labor contract,[8] it was utterly insufficient as a basis for a finding of retaliatory discharge. *Cf. United Planning Org. v. Comm'n on Human Rights,* 530 A.2d 674, 679 (D.C. 1987) (demonstrating discriminatory intent and pretext under D.C. Human Rights Act of 1977 "requires more than merely showing that the employer was mistaken"). Indeed, the insubstantiality of petitioner's claim is shown by her repeated assertion that WMATA knew that the condition for which Dr. Coster was treating her was "claimed *in good faith* to be the result of a work-related injury" (emphasis added). Although petitioner insists she acted in good faith in staying home even though objectively (as the agency found) her work-related injury had ended over a month earlier, she insists that WMATA acted in bad faith—with retaliatory animus—in relying on the judgment of its physician (and likely that of Dr. Rodriguez) that her further absence had no justification. The Director was unimpressed with this reasoning, and properly so. The retaliatory discharge provision is an *important protection against* acts by employers intended to discourage valid workers' compensation claims; it does not reach—and would be trivialized if construed to reach—discharge of an employee who the employer in good faith believes has violated work and attendance rules, even if the discharge is "unreasonable." *Dyson, supra,* 566 A.2d at 1066 n. 7.

The order denying compensation is, accordingly,

*Affirmed.*

the WMATA officials who ultimately ordered petitioner's discharge were aware of Dr. Rodriguez' opinion as well as Dr. Sislen's.

8. We were informed at oral argument that petitioner at some point instituted an arbitration proceeding under the Labor Agreement with WMATA, as a result of which she was ordered reinstated, but that she has elected not to resume her employment. Parenthetically, therefore, all that is at issue in this workers' compensation matter is back pay. Petitioner concedes that she did not request back pay in the arbitration proceeding, although the Labor Agreement, which is in the record, appears silent on whether that relief can be requested.