5000 WISCONSIN INC., Petitioner,

v.

DISTRICT OF COLUMBIA DEPART-
MENT OF EMPLOYMENT SER-
VICES, Respondent,

Leocadie Ayemonche, Intervenor.

No. 97–AA–1758.

District of Columbia Court of Appeals.

Argued March 18, 1999.
Decided April 8, 1999.

Christopher C. Fogleman, Rockville, MD, for petitioner.

Steffanie J. Lewis, Arlington, VA, for intervenor.

Jo Anne Robinson, Principal Deputy Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, filed a statement in lieu of brief for respondent.

Before FARRELL and REID, Associate Judges, and KERN, Senior Judge.

REID, Associate Judge:

On January 23, 1995, a hearing examiner from the Department of Employment Services ("DOES") issued a compensation order, concluding that intervenor Leocadie Ayemonche was temporarily totally disabled due to a work-related injury from July 13, 1992 to October 8, 1992; and that 5000 Wisconsin

Inc. ("the employer") discriminated against her in contravention of D.C.Code § 36–342 (1993). After reviewing additional documentary evidence of Ms. Ayemonche's work schedule, the hearing examiner issued a supplementary compensation order awarding her "temporary total disability benefits for the period July 13, 1992 through October 8, 1992; ... all causally related medical expenses; ... interest on all accrued benefits; and [reinstatement] to her usual employment and paid, in full, the wages lost from October 8, 1992 [until her] return to employment," pursuant to the District of Columbia Workers' Compensation Act of 1979, as amended, D.C.Code § 36–301 *et seq.* The employer seeks review of the October 8, 1997 decision of the Director of DOES affirming the hearing examiner's compensation orders, specifically the determination of the employer's discrimination under § 36–342.[1] Concluding that there is insufficient evidence in the record to support Ms. Ayemonche's claim of retaliatory discharge, we reverse the award of back pay.

## FACTUAL SUMMARY

Ms. Ayemonche was employed on a part-time basis as an order-taker/cashier at the employer's carry-out pizza restaurant. She also worked at the Cheesecake Factory in a similar capacity. On July 13, 1992, while on duty at the pizza restaurant, she was struck by a falling ceiling tile on her neck and right shoulder. Ms. Ayemonche sought immediate medical attention at Sibley Hospital, where she was examined and advised not to work for the next two days. Ms. Ayemonche returned to work at the pizza restaurant on July 17, 18 and 20, 1992, but was unable to perform her duties due to continuing pain and swelling in her right arm and wrist.

On July 21, 1992, she sought further medical treatment from Dr. Anthony S. Unger, an orthopedic surgeon. Dr. Unger determined that Ms. Ayemonche was "totally disabled" because she had sustained a cervical strain

and a contusion of her right wrist as the result of her July 13, 1992 injury. During this period, Ms. Ayemonche continued to work at the Cheesecake Factory because her duties did not involve reaching above the shoulder level and were less strenuous than those required at the pizza restaurant.

On July 28, 1992, Ms. Ayemonche was authorized to return to work at the pizza restaurant, provided that she did not perform any overhead work or lift more than twenty-five pounds. That day, Ms. Ayemonche notified the employer of her medical release, and requested to be placed back on the work schedule. The employer did not schedule her for any work assignments.

On August 5, 1992, Dr. Unger again concluded that Ms. Ayemonche was "totally disabled." He, however, informed her that she could perform limited work duties on August 13, 1992. At that time, Ms. Ayemonche attempted to return to work at the pizza restaurant, but was not placed on the schedule. She testified that the employer "wanted the thing to be settled before [she came] back ...." Ms. Ayemonche was authorized to return to work without any medical restrictions on October 8, 1992. There was also testimony that Ms. Ayemonche, at some point, went to the employer to speak to a manager. She was told, however, that the person that she needed to see was at the employer's other restaurant. Ms. Ayemonche then went to the other restaurant, but the person was no longer there. She was never scheduled for work after notifying the employer of her medical release.

A full evidentiary hearing on her claim for disability benefits was held before a hearing examiner from DOES on April 8, 1993. The hearing examiner issued a compensation order on January 23, 1995, concluding that Ms. Ayemonche: (1) sustained a work-related injury on July 13, 1992, which left her temporarily totally disabled until October 8, 1992; (2) presented uncontested, "substan-

---

1. The employer does not challenge the hearing examiner's award of temporary total disability benefits, related medical expenses, and interest on accrued benefits to Ms. Ayemonche since its workers' compensation insurer has already paid the claim. The employer also does not dispute

Ms. Ayemonche's reinstatement as a condition of the award. Pursuant to the hearing examiner's May 10, 1995 Supplementary Compensation Order, the employer reinstated Ms. Ayemonche on May 15, 1995. She voluntarily resigned on May 16, 1995.

tial credible evidence" that she filed a claim for compensation benefits; and (3) "presented credible testimony [that] she made several [unavailing] attempts to return to her employment after her release to duty by her physician." In addition, the hearing examiner determined that the employer "ha[d] not carried its burden of production" since the record is devoid of any evidence either showing that Ms. Ayemonche was scheduled for a "post-release tour of duty" or rebutting her claim of disparate treatment. As a result, the examiner ruled that Ms. Ayemonche was "entitled to reinstatement to, and back wages, from [the] employer."

The Director of DOES affirmed Ms. Ayemonche's award, stating that there was substantial evidence in the record of: (1) her temporary total disability due to a work-related injury; (2) the employer's refusal to schedule her for work until she could perform all her duties; and (3) "disparate, uncompromising treatment from the employer" signifying a "constructive discharge." In support of his conclusion that there was substantial evidence of retaliation by the employer against Ms. Ayemonche, the Director determined that: "Her constructive discharge was openly hostile and based upon a desire to jettison a team player who had been adjudged to be less than fully viable and therefore, no longer useful."

## ANALYSIS

The employer claims that Ms. Ayemonche failed to establish a prima facie case for discrimination because: (1) "Proof that [it] did not schedule [her] for work prior to October 8, 1992, when she first regained the ability to perform all of her employment duties, is insufficient to establish a claim for retaliatory discharge"; and (2) she did not "prove that the disparate treatment was motivated by animus against [her] because of her pursuit of her rights." Moreover, even assuming *arguendo* that there is an inference of discrimination, the employer contends that it rebutted this inference by establishing "two non-discriminatory, non-retaliatory and non-pretextual reasons for not placing Ms. Ayemonche back on the work schedule: [her] physical inability to perform all of her job responsibilities and the lack of available work hours." Consequently, the employer argues that the agency's conclusion that it discriminated against Ms. Ayemonche is unsupported by substantial evidence in the record. We agree.

■ "To establish a prima facie case for retaliatory discharge under D.C.Code § 36–342, the employee must prove: (1) that the claimant made or attempted to make a claim for workers' compensation, and (2) that the employer discharged him or her in retaliation for that action." *St. Clair v. District of Columbia Dep't of Employment Servs.*, 658 A.2d 1040, 1042 (D.C.1995) (citing *Abramson Assocs., Inc. v. District of Columbia Dep't of Employment Servs.*, 596 A.2d 549, 552 (D.C. 1991) (other citation omitted)).

The Director relied on the findings of the hearing examiner in concluding that Ms. Ayemonche was subjected to "disparate, uncompromising treatment from the employer when she attempted to return to her job," and in determining that Ms. Ayemonche's "constructive discharge was openly hostile and based upon a desire to jettison a team player who had been adjudged to be less than fully viable and therefore, no longer useful." In his January 23, 1995 compensation order, the hearing examiner concluded that Ms. Ayemonche established a prima facie case for retaliatory discharge under § 36–342:

In the instant case, claimant has presented substantial credible evidence, which was uncontested, she made a claim for compensation benefits after having sustained [ ] a duly noticed employment-related injury on or about July 13, 1992. Claimant has further presented credible testimony she made several attempts to return to her employment after her release to duty by her physician: claimant's attempts encompassed telephonic, and written, communication with her supervisors and managers. Finally, claimant has credibly testified she was not placed on the schedule after said requests. Thus, claimant has met her *prima facie* burden of production and the burden shifts to employer. Employer has not carried its burden of production on the issue.

Based on our review of the record, Ms. Ayemonche has not satisfied the second prong of a prima facie retaliatory discharge claim. Her testimony that the employer's manager told her, during a telephone conversation, that she would not be scheduled for work until "the thing [was] settled" is ambiguous, and thus, insufficient by itself to show retaliation under § 36–342. Similarly, the fact that Ms. Ayemonche made "several attempts to return to her employment," but "was not placed on the schedule after said requests," does not show retaliation under the statute. During her testimony at the compensation hearing, Ms. Ayemonche did not mention any hostility that she encountered in her calls or visits to the employer's agents. At most, the record reflects an effort on the part of the employer's agents to avoid scheduling her for work because of her physical limitations. "We have held that discharge of an injured employee who is unable to perform the work, even if unreasonable, is insufficient to establish a claim for retaliatory discharge under § 36–342." *St. Clair, supra*, 658 A.2d at 1043 (citing *Lyles v. District of Columbia Dep't of Employment Servs.*, 572 A.2d 81, 84 (D.C.1990)).

Although the evidence presented by Ms. Ayemonche may constitute a constructive discharge, "the required animus [to prove a retaliatory discharge] entails some additional showing beyond the firing, such as evidence of a pattern and practice of discriminating against employees filing compensation claims." *Lyles, supra*, 572 A.2d at 84 (citing *Dyson v. District of Columbia Dep't of Employment Servs.*, 566 A.2d 1065, 1066 n. 7 (D.C.1989)). There must be proof that "[t]he employer's motivation for the firing [was, at least in part,] the employee's pursuit of his rights under the statute." *St. Clair, supra*, 658 A.2d at 1043 (citing *Lyles, supra*, 572 A.2d at 84 (citing *Geddes v. Benefits Review Bd.*, 236 U.S.App. D.C. 381, 384, 735 F.2d 1412, 1415 (1984))). Ms. Ayemonche has not made the required additional showing beyond the employer's refusal to return her to work. Consequently, since there is insufficient evidence in the record to support a finding or conclusion that employer's failure to place Ms. Ayemonche back on the work schedule was motivated wholly or in part by the requisite animus, we reverse the Director's decision in so far as it affirms an award of back pay. *See Snipes v. District of Columbia Dep't of Employment Servs.*, 542 A.2d 832, 835 (D.C.1988) (This court will disturb an agency's decision when it is " 'unsupported by substantial evidence in the record of the proceedings.' ") (quoting D.C.Code § 1–1510(a)(3)(E)).

Accordingly, for the foregoing reasons, we reverse the Director's decision affirming the hearing examiner's award of back pay.

*Reversed.*